UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNDA KINCH,

      Plaintiff,

v.

PINNACLE FOODS GROUP, LLC,

      Defendant.

Case No. 16-12840

Honorable Nancy G. Edmunds

_____/


**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION
[20, 21]**

Before the Court is Plaintiff's motion for reconsideration of the Court's July 17, 2017 opinion and order granting Defendant's motion for summary judgment. (Dkt. no. 18.) For the reasons set forth below, the Court finds that there is no palpable defect in the opinion and order and that Plaintiff has not persuaded the Court that it should rule differently, therefore the Court DENIES Plaintiff's motion for reconsideration.

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a party may file a motion for reconsideration within fourteen days after a court issues an order to which the party objects. Although a court has the discretion to grant such a motion, it generally will not grant a motion for reconsideration that "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). To persuade a court to grant the motion, the movant "must not only demonstrate a palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.*

**I.    The Existence Of A Prior At-Will Provision Was Not Determinative In Granting Defendant's Motion For Summary Judgment**

Plaintiff first asks the Court to reconsider its prior decision regarding the existence of an at-will agreement. In its opinion and order the Court addressed the existence of an at-will provision that appeared on a document signed by Plaintiff, dated September 21, 2001, with Pinnacle Foods Corporation. The Court noted at that time that the lineage of the corporation was unclear, also noting that the parties' beliefs at the hearing were that the current Defendant Pinnacle has different owners than the Pinnacle Food Corporation with whom Plaintiff signed the agreement. (Op. and Order 9-13, July 17, 2017, dkt. 18.) Although "[t]he 'implied contract' theory of *Toussaint* may not be relied upon in Michigan when there is an express contract covering the same subject matter," and the Sixth Circuit has noted that it has not discovered precedent that "an expressly at-will employment relationship may be turned into a just-cause relationship by no more than a legitimate expectation on the part of the employee," this Court went on to consider Plaintiff's just-cause claim, noting the ambiguity about both the current ownership of Defendant Pinnacle and the applicability of the 2001 document. *See Mannix v. County of Monroe*, 348 F.3d 526, 533 (6th Cir. 2003). With respect to the employee handbook that contains an at-will provision, the Court considered testimony that the handbook applied to hourly, not salary, employees, thus raising a question of fact as to its application. (Op. and Order July 17, 2017, at 13; *see also* Album Dep. 39:25-40:05, dkt. 14-7 "My sense is it was really written for the hourly employees, salary employees followed the sort of corporate policies, that's my sense.") The existence of at-will statements within documents of former and/or current Pinnacle entities was not determinative of the Court's findings and conclusions in the

motion for summary judgment and the Court proceeded to consider Plaintiff's legitimate expectations claim. (Op. and Order 13, July 17, 2017.) The Court will deny Plaintiff's motion for reconsideration on this issue.

## II. Plaintiff Has Not Demonstrated A Genuine Issue of Fact As To Whether She Had An Expectation That Her Employment Would Be Terminated Only For Just Cause

Next, Plaintiff again argues that Defendant's conduct established a just cause termination policy. In its opinion and order, the Court engaged in the two-step analysis for a legitimate expectations claim: First, determining "*what*, if anything, the employer has promised," express or implied; and second, determining "whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment in the employer's employees." *Rood v. General Dynamics Corp.*, 507 N.W.2d 591, 606-07 (Mich. 1993); *see also* Op. and Order 13-16, July 17, 2017, dkt. 18.

"Established procedures, although not reduced to writing, may also demonstrate a right to continued employment absent cause for termination." *Henry v. Hosp. and Health Servs. Credit Union*, 416 N.W.2d 338, 340 (Mich. Ct. App. 1987) (citing *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (Mich. 1980)). "However, a mere subjective expectancy of continued employment on the part of an employee will not justify an expectation of termination for just cause only." *Id.* (citing *Dzierwa v. Michigan Oil Co.*, 393 N.W.2d 610 (Mich. Ct. App. 1986)). While cases indicate that an employee's subjective expectation that her employment would not be terminated without just cause is not enough to justify an expectation of just cause employment, and a case of subjective belief coupled with several employees being terminated with reasons that may imply just cause is not enough, cases where the belief is coupled with something more may raise questions for

3

a jury. *Compare Schwartz v. Michigan Sugar Co.*, 308 N.W.2d 459, 462 (Mich. Ct. App. 1981) ("Plaintiff's deposition testimony made it clear that he felt he could only be discharged for cause not because of any representations or policies promulgated, but because of his own personal belief that an employee doing competent work would be retained as a company asset. . . . Such a subjective belief is insufficient to establish a contract implied in fact.") and *Henry*, 416 N.W.2d 338, 340 ("[T]he mere fact that three employees were terminated during a five-year period for reasons that may imply just cause is not enough to create a genuine issue of fact as to whether plaintiff had an expectation that her employment would be terminated for just cause only."), *with Wiskotoni v. Michigan Nat'l Bank-West*, 716 F.2d 378, 386 (6th Cir. 1983) (Evidence that the plaintiff employee had a legitimate expectation that employment would be terminated only for cause included the plaintiff's testimony of his understanding, coupled with a statement in the employment manual providing for a limited probationary period in which an employee may be terminated "without any other reason", as well as the defendant bank president's failure to dispute the statement "it's your practice to dismiss for cause," made during cross-examination. "The district court did not err in finding that this evidence was sufficient to support the conclusion that a Bank employee had a legitimate expectation that employment would be terminated after the probationary period only for cause.").

In its prior opinion and order, the Court considered the testimony of employees that noone had been terminated without cause or that reasons were given and procedure followed for termination.[1] (Op. and Order 14-16, July 17, 2017, dkt. 18.) Yet the Court also

---

[1] Plaintiff states that "Even Kelly Maggs, the Defendant's executive Vice President, Secretary and General Counsel, believed that supervisors and managers could only be

noted the dearth of language, written or oral, express or implied, that could be interpreted as a promise to discharge only for just cause. (Op. and Order, July 17, 2017, dkt. 18.) In the context of the range of caselaw cited above and as set forth in the prior opinion and order, the Court found that Plaintiff failed to provide evidence to support a claim that her employer's conduct established a just cause employment policy or that her employer has a policy of terminating salary employees only with cause. Plaintiff's allegations are similar to those of *Henry* where a subjective belief coupled with reasons given to other employees for termination was insufficient to support a conclusion that Plaintiff had a legitimate expectation that she would be terminated only for cause.

## III.   Plaintiff Failed to Demonstrate Retaliation or Pretext

Plaintiff asks this Court to reconsider its decision that Plaintiff failed to show that she was similarly situated to other employees. Plaintiff argues that the Court interpreted "similarly situated" too narrowly given Plaintiff's unique position within the company. As the Court pointed out in the prior opinion and order, Plaintiff had provided no evidence that she and the other employees shared the same supervisor; they were in different departments and had different titles and positions. The Sixth Circuit has stated that

> [T]o be "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct

---

terminated for cause." However, Plaintiff's argument is not based upon testimony from Maggs, general counsel, but is based upon the affidavit of former employee Keith Kinch. Keith Kinch attests that when Kinch identified the need to get rid of the plant manager to improve union cooperation, Maggs told him to give the company a legitimate reason to terminate the plant manager. Kinch followed these instructions and the plant manager was terminated. Keith Kinch concludes that "[l]ogically, if we were at-will employees, there would've been no reason for Kelly Maggs to instruct me on how to get rid of [the plant manager] . . . ." (Keith Kinch Aff. ¶ 9, dkt. 14-5.)

> without such differentiating or mitigating circumstances that would distinguish
> their conduct or the employer's treatment of them for it.

*Jackson v. FedEx Corporate Servs., Inc.,* 518 F.3d 388, 393 (6th Cir. 2008) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000); and Op. and Order 21 n.9, July 17, 2017. *Jackson* reminds the Court that "the appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson*, 518 F.3d at 394 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). For example, in *Ercegovich*, the Sixth Circuit found that the district court erred in concluding that "the individuals with whom [the plaintiff] sought to compare his treatment must perform the same job activities as [the plaintiff]," and that because "none of the individuals with whom [the plaintiff] sought to compare himself . . . carried out the same job functions as the plaintiff," the plaintiff failed to establish a prima facie case. *See Ercegovich*, 154 F.3d at 353. "Because the positions previously held by [the plaintiff], Evert and Cohn [the other employees] were all related to human resources positions that were all eliminated pursuant to a general reorganization of the department of Human Resources Development . . . , we conclude that [the plaintiff] was similarly-situated to Evert and Cohn to satisfy the fourth component of [the plaintiff's] prima facie case." *Id.*

Plaintiff argues that she was the only HR Supervisor at the time she was terminated and, therefore her position was unique, and the Court should have cast a broader net in finding employees with whom to compare her. (Pl.'s Mot. for Reconsideration 14, dkt. 20.) Plaintiff's argument was addressed in the prior opinion and order, yet the Court will shed additional light on it here. At the time of Plaintiff's termination, Michael Ryan was the HR

Manager and had reported to that position at the Imlay City plant on or about October 15, 2013; he was the HR manager who decided to terminate Plaintiff's employment. (Def.'s Reply 6; Compl. ¶ 75.) As the Court pointed out in its opinion and order, Plaintiff provides no evidence that she and the other employees whom she identifies shared a supervisor. Unlike *Ercegovich*, the employees named by Plaintiff are not in the same department, with the exception of Ryan, who was Plaintiff's superior. Yet these factors may not be required in every case to show that others were similarly situated.

The Sixth Circuit in *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 479 (6th Cir. 2003), noted that "the 'same supervisor' criterium has never been read as an inflexible requirement." *Id.* at 479. *Seay* is distinguishable. Seay had misused his employer's vehicle and was suspended for sixty days. *See id.* The Sixth Circuit agreed that the plaintiff had demonstrated that he was similarly situated to another employee, Mason, who had misused the employer's vehicle twice without permission and was suspended for only thirty days. *See id.* at 480. Despite Mason working in an entirely different department with a different supervisor, the court noted that a requirement of "same supervisor" criterium is "particularly problematic here, where a violation such as vehicle misuse does not occur frequently enough to invite such a direct comparison within a compartmentalized organization." *Id.* Yet several discussions had taken place regarding the decision to suspend the plaintiff, as well as a meeting involving multiple supervisors, managers and representatives from the human resources department and the legal department and "[p]ast discipline for similar misuse was discussed at that meeting." *Id.* "[A]ll of the people involved in the decision-making process, including Plaintiff's immediate supervisor and the department manager, were well-aware of the discipline meted out to past violators, including . . . Mason, . . . ." *Id.*

Even considering Plaintiff's "unique" position, Plaintiff has failed to identify other relevant similarities. In general, Plaintiff has provided a list of employees consisting of others in supervisory or management roles, such as supervisors, managers and a plant controller, and including both men and women, who have allegedly engaged in what could be generally and broadly termed "bad behavior" towards others or violation of express policy. Plaintiff provides no evidence that she and these other individuals were subject to the same standards. Further, the behavior attributed to these other employees varies from Plaintiff's behavior as alleged by her supervisor[2]. While these individuals were similar in that they held supervisory or management roles, there is no evidence that Plaintiff and the others dealt with the same supervisor, engaged in the same behavior or were subject to the same standards. As the Sixth Circuit pointed out in *Jackson*, "the appropriate test is to look at those factors relevant to the factual context as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson*, 518 F.3d at 394. Plaintiff has not established a prima facie case of retaliation.

With respect to Plaintiff's arguments that the reason for terminating her was mere pretext and that Plaintiff presented a genuine issue of material fact of age and/or sex discrimination, Plaintiff presents the same arguments that were addressed in the Court's prior opinion and order. Plaintiff has not demonstrated a palpable defect by which the Court has been misled that would result in a different disposition of this case.

## IV.    Conclusion

---

[2]Among the reasons given for Plaintiff's termination was communication directed by her at her supervisor, in contrast to that behavior of other employees, which behavior does not appear to have been directed at superiors. (Kinch Aff. ¶¶ 20-24, 25, dkt. 14-2.)

For the reasons set forth above, the Court DENIES Plaintiff's motion for reconsideration (dkt. 20, 21).


SO ORDERED.


S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 22, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2018, by electronic and/or ordinary mail.

S/Lisa Bartlett
Case Manager